IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMIKHET EN MAATI, | ) | 8:12CV314 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| STATE OF NEBRASKA, | ) | |
| | ) | |
| Respondent. | ) | |

  This matter is before the court on Petitioner Amikhet En Maati's ("Petitioner" or "A.M.") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons set forth below, a grant of a writ of habeas corpus is not warranted on any of the issues raised in the petition.

## I. BACKGROUND

### A. State Court Proceedings

  This matter arises out of a sex offender commitment order issued by the Mental Health Board of Sarpy County, Nebraska, on February 12, 2010. (Filing No. 10-1 at CM/ECF pp. 1-2.) The Nebraska Court of Appeals's opinion in *In re A.M.*, No. A-10-670, 2011 WL 2723788 (Neb. Ct. App. July 12, 2011), sets forth much of the relevant factual and procedural background:

>   A.M. was convicted of second degree sexual assault and sexual assault of a child on July 1, 1999, and was sentenced to a total of 20 years in prison. The convictions were a result of A.M. sexually assaulting his stepdaughter when she was between 5 and 7 years old. A.M. was previously convicted of attempted sexual assault of a child in October 1996. That offense also involved his stepdaughter.

Prior to A.M.'s scheduled release from prison on the most recent convictions, the Nebraska Department of Correctional Services (DCS) ordered an evaluation pursuant to Neb.Rev.Stat. § 83-174.02 (Reissue 2008) in order to determine whether A.M. was a dangerous sex offender. Section 83-174.02 defines a dangerous sex offender as a person who suffers from a mental illness or from a personality disorder which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of multiple sex offenses, and who is substantially unable to control his or her behavior.

The evaluation of A.M. was performed by Stephanie Bruhn, Ph.D., a licensed psychologist employed by DCS. Dr. Bruhn prepared a written report of her evaluation dated October 10, 2008. In her report, Dr. Bruhn concluded that A.M. is a dangerous sex offender. Specifically, she found:

> [A.M.] meets criteria for an Axis I diagnosis of Pedopihilia, Sexually Attracted to Females, Nonexclusive and has been convicted of 2 current sexual offenses and 1 prior sexual offense. He appears substantially unable to control his criminal behavior as evidenced by the fact that he was convicted of sexually assaulting the same victim despite having legal sanctions.

As a result of Dr. Bruhn's conclusion that A.M. is a dangerous sex offender, the Sarpy County Attorney filed a petition pursuant to [the Sex Offender Commitment Act (SOCA), Neb. Rev. Stat. §§ 71-1201 to 71-1226] on October 29, 2008. A copy of this petition is not included in our record.

On February 10, 2010, the Board conducted a hearing on the petition. At the hearing, Dr. Bruhn testified concerning her evaluation of A.M. She testified that A.M. is a dangerous sex offender within the meaning of SOCA. Dr. Bruhn diagnosed A.M. as suffering from pedophilia, sexually attracted to females, nonexclusive, an "Axis I" mental illness. Dr. Bruhn elaborated further on her diagnosis of A.M. as follows:

> [H]e engaged in sexual behaviors with a prepubescent, five- to seven-year-old female over the course of at least two

years. [A.M.] identified . . . that he had sexual thoughts about the victim during the assaults. . . . He also had-has received legal sanctions with regard to his sexual behaviors and also relationship and interpersonal difficulties as a result of his behaviors.

Dr. Bruhn also diagnosed A.M. as suffering from a personality disorder with psychopathic and antisocial traits, an "Axis II" diagnosis. Dr. Bruhn elaborated on this diagnosis as follows: "[A.M.] exhibits some poor behavior controls, some lack of remorse for others, some impulsivity. Those types of things fit with the psychopathic and antisocial traits."

Dr. Bruhn testified that A.M.'s mental illnesses make him more likely to sexually reoffend and make it more difficult to control his criminal behavior. She testified that individuals with pedophilia are at risk to reoffend if they do not have any therapeutic interventions and that A.M.'s personality disorder exacerbates "the difficulties surrounding the Axis I pedophilia diagnosis in regard to the fact that it is going to increase impulsivity." Dr. Bruhn indicated that it was her professional opinion that A.M. poses a danger to others and is at a high risk to reoffend sexually.

Dr. Bruhn testified that inpatient treatment would more effectively address A.M.'s therapeutic needs and his risk to reoffend sexually than would outpatient treatment. She testified that she is not aware of any outpatient treatment programs in Nebraska which would address A.M.'s specific needs. However, she did indicate that she is not familiar with every single outpatient program. Dr. Bruhn indicated that in order to effectively treat A.M., an outpatient program would have to be extremely structured and provide extensive, personal supervision. Dr. Bruhn testified that inpatient treatment would take away access to liberties and freedoms that A.M. would be provided in the community. The limits inpatient treatment would provide would assist A.M. in completing his treatment plan. Dr. Bruhn indicated that A.M. failed to complete numerous treatment plans even while within the confines of prison.

Following the hearing, the Board entered an order in which it found clear and convincing evidence that the allegations in the petition were true. The Board specifically found that A.M. suffers from pedophilia,

sexually attracted to females, nonexclusive, an "Axis I" mental illness and from a personality disorder not otherwise specified with psychopathic and antisocial traits, an "Axis II" diagnosis. The Board also found that A.M. is dangerous to others and that without treatment, he poses an ongoing risk to sexually reoffend. The Board found that inpatient treatment was the least restrictive treatment alternative which would meet A.M.'s needs and protect the community. The Board ordered A.M. committed to the Nebraska Department of Health and Human Services for inpatient sex offender treatment pursuant to an individualized treatment plan.

A.M. appealed the Board's order to the district court, which affirmed the Board's decision. The court found clear and convincing evidence to support the Board's finding that A.M. is a dangerous sex offender within the meaning of SOCA and that inpatient involuntary treatment is the least restrictive treatment alternative.

*In re A.M.*, 2011 WL 2723788 at *2-3.

Petitioner appealed the district court's order to the Nebraska Court of Appeals, which also denied relief. *See id.* at *4. Thereafter, Petitioner unsuccessfully petitioned the Nebraska Supreme Court for further review of the matter. (Filing No. 10-4 at CM/ECF p. 3.) Petitioner did not seek collateral review of the mental health board's order of commitment.

## B.     Habeas Corpus Petition

Petitioner filed his habeas corpus petition in this matter on September 6, 2012. (Filing No. 1.) He raised numerous due process and ineffective assistance of counsel arguments in his petition.

Respondent filed a Motion for Summary Judgment on December 13, 2012, in which he argued that all of Petitioner's claims were procedurally defaulted. (Filing No. 11 at CM/ECF pp. 2-3.) Thereafter, the court denied Respondent's motion because it could not determine from the record whether Petitioner's claims of ineffective

assistance of counsel were unexhausted, exhausted by procedural default, or otherwise properly before the court. (Filing No. 15 at CM/ECF p. 3.)

In response to the court's order, Respondent filed an answer, brief, and the relevant state court records. (Filing Nos. 17, 18, 21, 22, and 23.) Thereafter, Petitioner filed a brief in support of his habeas corpus petition. (Filing No. 27.) In light of these submissions, the court deems this matter fully submitted.

## II. STANDARD OF REVIEW

### A. Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405-406. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted). The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply

6

AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

**B.     Exhaustion Requirement**

As set forth in 28 U.S.C. § 2254(b)(1):

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i)    there is an absence of available State corrective process; or
            (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief. *Id.* at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney,* 410 F.3d 451, 454-55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins,* 410 F.3d at 456 n. 1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz,* 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002).

In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted).

### III. DISCUSSION

**A.  Due Process Claims**

Liberally construed, Petitioner argues that his due process rights were violated when (1) he did not receive a hearing before the mental health board within seven days in violation of Nebraska state statutes (Filing No. 1 at CM/ECF p. 5); (2) he did not receive a summons, copy of the petition, and a list of his rights in violation of Nebraska state statutes (*id.* at CM/ECF pp. 6-9); (3) his evaluation was not ordered 180 days prior to his scheduled release date or completed 150 days prior to his scheduled release date in violation of Nebraska state statutes (*id.* at CM/ECF p. 9); (4) the Sarpy County Attorney filed a petition pursuant to SOCA even though she knew or should have known that there had been noncompliance with Nebraska state statutes (*id.* at CM/ECF pp. 11-13); (5) the Sarpy County Attorney filed the petition pursuant to SOCA despite not having received an affidavit from a mental health professional in violation of Nebraska state statutes (*id.* at CM/ECF p. 13); and (6) Ann Ebsen, the chair of the Sarpy County

Mental Health Board did not comply with Nebraska state statutes when she issued an order of detention (*id.*).

Petitioner's first opportunity to raise his due process arguments in state court was on appeal to the state district court following the mental health board's issuance of an order of commitment. See Neb. Rev. Stat. § 71-1214. Petitioner did not raise any federal due process claims to the state district court. (*See* Petitioner's "Statement of Errors" filed with the state district court at Filing No. 17-3 at CM/ECF p. 1.) Moreover, he failed to fairly present any claims to the Nebraska Court of Appeals on appeal from the state district court's affirmance of the mental health board's order of commitment. See *In re A.M.*, 2011 WL 2723788 at *3 (finding that Petitioner had provided the court with a brief that did not comply with Supreme Court rules because it did not assign any errors; court noted it could consider the case as one in which no brief was filed, but opted to examine the proceedings for plain error). For these reasons, Petitioner did not fairly present any federal due process arguments in the Nebraska state courts in one complete round as required by 28 U.S.C. § 2254(b)(1). Accordingly, Petitioner's federal due process claims are procedurally defaulted. In the alternative, as forth below, even if Petitioner had not procedurally defaulted these claims, the claims are meritless.

First, all of Petitioner's due process arguments challenge various state actors' compliance with Nebraska state statutes. Respondent argues that a federal habeas corpus action is not a vehicle by which a state prisoner may have a federal court second guess a pure question of state law, such as compliance with state statutory schemes. (Filing No. 23 at CM/ECF p. 16.) The court agrees. See *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("federal habeas corpus relief does not lie for errors of state law") (internal quotation and citation omitted).

Second, both the mental health board and the state district court considered and rejected the crux of the arguments Petitioner now raises as federal due process claims. In an order denying a motion to dismiss the SOCA petition, the mental health board wrote:

(1) Objections about the appointment of counsel defects (#1) are without merit. [A.M. has] been ably defended by the Public Defender. E-mail traffic shows involvement of the Public Defender from early in the proceedings. Any procedural defects have resulted in no prejudice[.]

(2) As to #2, [A.M.] was personally served by a deputy sheriff with a copy of the petition, warrant, list of rights, and a list of psychiatrists he might consult in defense. [A.M.] did have a hearing set within seven days in papers he received. . . .

As is common, no meaningful defense could be put together in seven days. The Public Defender and County Attorney agreed to continuances. In any event, no harm follows on not having hearings within seven days as [A.M.] has raised well presented and serious issues, undertaken discovery, sought experts and done things necessary to best protect [himself]. The time developing [his] case[] has been appropriate and of [his] choosing and may well benefit [him] at eventual disposition hearings. *See In Re: Interest of E.M.*, 13 Neb.App. 287 (2005).

(3) . . . The late evaluation of [A.M.] (Ex. 4) came to the County Attorney without the evaluator's affidavit, just her signed evaluation. The County Attorney filed the petition and a few days later an affidavit was executed by the evaluator and appears on Exhibit 4.

Setting aside until later the untimeliness of the evaluations, is the petition based on the County Attorney's reliance on a signed but not verified competent professional's evaluation fatally defective? Not under these circumstances. 83-174.02 and the 150 day notice to the Attorney General and a county attorney has a purpose: to let the Attorney General and the relevant county attorney know a prisoner is up for release that a county attorney may want to file a Sex Offender Commitment Act (SOCA) case based on the evaluation. A petition filed without an affidavit only challenges the prosecutor's judgment to file or not file. Here there was no suggestion the evaluator did not swear to her report because she felt it weak or not fully defensible in her opinion. The petition recites the report, the County Attorney's reliance on it without the affidavit does not undermine the facial competence of the report or the competence of the prosecutor's judgment to file a petition based on the contents of the report.

The belated affidavit cures the technical defect. There is no harm that needs a remedy here.

(4) Any untimeliness of the 83-174 requirement of 90 day notice by the Department of Corrections to county attorneys, the State Patrol, and Attorney General has to do with registration of certain offenders. It is not an issue in this litigation.

In spite of the use of "shall" usually indicating a mandatory order, the overall system the Sex Offender Commitment Act (SOCA) put in place would indicate the time frame is to aid in the expeditious handling of the processing of possible sex offender cases. For example, the 180 days and the 150 days notice to county attorneys is meant to allow them adequate time to make filing decisions. In optimum cases, SOCA disposition could occur prior to release, a seldom achieved but not required goal. *See In Re: Interest of J.R.*, 277 Neb. 362 (2009), noting that a county attorney may file against even a released prisoner and has no obligation to file prior to release, these time frames do not provide the prisoner a right of requiring the dismissal of a petition.

That the 180/150 day scheme is not an inflexible mandate in favor of the prisoner is demonstrated also by the testimony of Department of Corrections witnesses that mandatory evaluations crop up and take timing precedent over others. Most failure to register offenders come to prison with fewer than 180 days to serve. The Unicameral did not intend that such short timers were immune from SOCA processing. The 180/150 day scheme is advisory and not a time table meant to allow any potential SOCA prisoners a way to avoid processing under SOCA.

In spite of clear statutory violations shown by [A.M.,] there is no case for the remedy of dismissal.

These cases are civil in nature. *In Re: Interest of J.R.*, 277 Neb. at 372. The sanction of dismissal of a civil suit is usually reserved to continuous misbehavior uncorrected after corrective court orders have issued. In short, to reach dismissal as a sanction, there would have to be some showing of misconduct, bad faith, or gaming the system by prison officials, the Attorney General, or county attorneys. *See In Re: Detention of Shaffer*, 08-1358, decided 7117/09, Supreme Court of Iowa.

> A lesser sanction of excluding the evaluations and evaluators as evidence due to missing deadlines would not solve a prisoner's problems. A County Attorney could seek a continuance, line up another expert evaluation, thus delaying the alleged offender's adjudication, and not change the substance of the evidence at the disposition hearing. The remedy of exclusion would not help the alleged offender, just delay his adjudication and discharge or treatment.
>
> Summarizing, dismissal or exclusion of evidence, even in the face of government misconduct it is not appropriate absent a showing of prejudice. None appears here. See *United States v. Morrison*, 449 U.S. 564 (1981).

(Filing No. 17-1 at CM/ECF pp. 2-5.)

On appeal to the state district court, Petitioner challenged the mental health board's denial of his motion to dismiss. (Filing No. 17-3.) The state district court denied "all claims or errors raised by" Petitioner, and separately determined that Petitioner is a dangerous sex offender who should be committed to inpatient treatment. (Filing No. 10-2.) Thereafter, the Nebraska Court of Appeals "reviewed the record for plain error" and, finding none, affirmed the order of the state district court. *In re A.M.*, 2011 WL 2723788 at *8.

The state courts' findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Petitioner has not argued, much less established, that the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state courts reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Third, to the extent Petitioner argues that violations of procedural requirements found within the Nebraska state statutes amount to a denial of his procedural due process rights, the Supreme Court noted in *Foucha v. Louisiana*, that a state may confine a person if it shows by clear and convincing evidence that "he is both mentally ill and dangerous." 504 U.S. 71, 77 (1992). Here, the mental health board determined that the state had presented clear and convincing evidence that Petitioner "suffers from pedophilia, sexually attracted to females, non-exclusive on Axis I and Axis II personality disorder NOS with psychopatic and anti-social traits," and that he is "dangerous to others." (Filing No. 10-1 at CM/ECF p. 1.) This determination was affirmed by the state district court, the Nebraska Court of Appeals, and the Nebraska Supreme Court. The state courts' findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Petitioner has not argued, much less established, that the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state courts reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

For all of the reasons set forth above, the court finds that a grant of a writ of habeas corpus is not warranted on any of the issues raised in Petitioner's due process arguments.

**B.    Ineffective Assistance of Counsel Claims**

   **1.    Mixed Petition**

Petitioner argues that the attorney who represented him during the civil commitment proceedings and the attorney who represented him on appeal were ineffective. Respondent argues that Petitioner's ineffective assistance of counsel arguments are unexhausted in the Nebraska state courts, and may yet be raised in a

collateral attack brought pursuant to Nebraska's habeas corpus statute. (Filing No. 23 at CM/ECF pp. 18-19).

When faced with a mixed petition, one containing exhausted and unexhausted claims, district courts have four options available: (1) dismiss the petition without prejudice, (2) stay the petition pending the outcome of state proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005), (3) allow the petitioner to delete all unexhausted claims and proceed on the remainder, or (4) if the unexhausted claims are plainly meritless, deny them under 28 U.S.C. § 2254(b)(2). *See Rhines*, 544 U.S. at 277–78.

A stay and abeyance under *Rhines* is only appropriate "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 276–78. In addition, a district court abuses its discretion if it grants a stay when unexhausted claims are "plainly meritless." *Id.* at 277 (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).

Here, Petitioner has not asked the court to stay his petition, or made any attempt to show good cause for his failure to exhaust claims that his attorneys were ineffective. Regardless, for the reasons discussed below, Petitioner's claims for ineffective assistance of counsel are plainly meritless. Thus, a stay would not be appropriate under *Rhines*, and the court may deny his claims on the merits notwithstanding his failure to exhaust the claims in the Nebraska state courts. *See* 28 U.S.C. § 2254(b)(2).

### 2. Merits

Liberally construed, Petitioner argues that he has been denied the effective assistance of counsel in violation of the Sixth Amendment. Petitioner was represented by two attorneys during the state court proceedings. The first attorney represented Petitioner during the civil commitment proceedings before the mental health board and

on appeal to the state district court. The second attorney represented Petitioner during his appeals to the Nebraska Court of Appeals and the Nebraska Supreme Court. Petitioner argues his first attorney (1) "did not protect [his] interests or consult or confer with [him]"; (2) "failed to conduct an adequate investigation [and] failed to call logical witnesses in support of the defense"; (3) undertook his representation "without [his] expressed consent and/or authorization, or lawful appointment"; (4) failed to "protect, preserve, and/or assert" his right to a hearing within seven days; and (5) agreed to a continuance without Petitioner's consent. (Filing No. 1 at CM/ECF pp. 9-10.) Petitioner argues that his second attorney did not "follow court rules" when he represented Petitioner before the Nebraska Court of Appeals. (*Id.* at CM/ECF p. 10.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. By its express terms, this right extends only to criminal proceedings. Petitioner's commitment is the result of a civil proceeding. The Sixth Amendment does not extend a right to effective assistance of counsel to civil commitment proceedings. *See Beaulieu v. Minnesota Dep't of Human Servs.*, 798 N.W.2d 542, 548 (Minn.Ct.App. 2011) ("[T]he Sixth Amendment right to the effective assistance of counsel does not apply in a civil-commitment proceeding."); *see also Kansas v. Hendricks*, 521 U.S. 346, 349 (1997) (holding that the double jeopardy clause of the Fifth Amendment does not apply to a civil-commitment proceeding); *Allen v. Illinois*, 478 U.S. 364 (1986) (holding that the Fifth Amendment right against self-incrimination does not apply in civil-commitment proceedings); *Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir.2005) (holding that the confrontation clause of the Sixth Amendment does not apply in civil-commitment proceedings). Accordingly, the court determines that Petitioner's claims do not invoke a federal right and therefore his claims are meritless.

In the alternative, even if petitioner has a constitutional right to effective counsel in civil commitment proceedings, his claims are substantively meritless. Under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner

must demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

Here, Petitioner asserts a variety of conclusions alleging that the attorney who represented him before the mental health board was ineffective. For example, Petitioner argues that his counsel did not protect his interests, failed to conduct an adequate investigation, and failed to call logical witnesses. However, Petitioner has failed to allege sufficient facts to demonstrate that his counsel was in fact deficient or that such allegedly deficient performance prejudiced him and rendered the result of the civil commitment proceedings unreliable or fundamentally unfair.

As to Petitioner's argument that counsel represented him without his consent, the argument is nonsensical and plainly meritless. Nebraska state statutes set forth that Petitioner had a right to be represented by counsel in the civil commitment proceedings. *See* Neb. Rev. Stat. § 71-945. Accordingly, an attorney from the Sarpy County Public Defender's Office was appointed to represent him. (*See* mental health board's order at Filing No. 17-1 at CM/ECF p. 2 ("Objections about the appointment of counsel defects[] are without merit. [A.M. has] been ably defended by the Public Defender. E-mail traffic shows involvement of the Public Defender in the proceedings. Any procedural defects have resulted in no prejudice[.]").)

As to Petitioner's argument that his attorney agreed to the continuance of a hearing without his consent, Petitioner's argument is inapposite because such consent is not necessary. An attorney has a duty to consult with the client regarding "important decisions, including questions of overarching defense strategy." *Strickland* 466 U.S. at 688. However, this obligation does not require counsel to obtain consent for "every tactical decision." *Taylor v. Illinois*, 484 U.S. 400, 417-481 (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval). Moreover, as set forth by the mental health board in its order denying Petitioner's motion to dismiss, "no harm follows on not having [the] hearing[] within seven days as [A.M.] has raised well presented and serious issues, undertaken discovery, sought experts and done things necessary to best protect [himself]." (Filing No. 17-1 at CM/ECF p. 3.)

Finally, as to Petitioner's argument that counsel failed to "follow court rules" when he represented Petitioner before the Nebraska Court of Appeals, Petitioner cannot establish prejudice. As set forth above, Petitioner's brief submitted to the Nebraska Court of Appeals did not comply with the Nebraska Supreme Court Rules because it did not assign any errors. *See In re A.M.*, 2011 WL 2723788 at *6. However, as clearly set forth in the court's opinion, the court could have considered the case as one in which no brief was filed, but it opted not to do so. *Id.* at *8. Rather, it reviewed the record for plain error and found none. *Id.* Petitioner does not set forth what, if anything, this plain error review did not encompass or how he was prejudiced by counsel's failure to assign errors in the brief.

In summary, the court finds that Petitioner's claims that counsel were ineffective are plainly meritless. Thus, pursuant to 28 U.S.C. § 2254(b)(2), the court may deny these claims on the merits, and dismiss the petition in its entirety, notwithstanding Petitioner's failure to exhaust them in the Nebraska state courts. The claims are meritless because they do not invoke a federal right or, in the alternative, because Petitioner cannot demonstrate that his counsel's performance was deficient or that such deficient performance prejudiced Petitioner's defense.

### IV.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Petitioner has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the issues raised in the Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:

1.  This matter is dismissed with prejudice, and a separate judgment will be entered in accordance with this Memorandum and Order.

2.  The court will not issue a certificate of appealability in this matter.

DATED this 6th day of January, 2014.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.